# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| JIMMIE LASLEY<br>923 Maplehurst Ave<br>Dayton, OH 45402 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| MEIJER DISTRIBUTION, INC.<br>4200 S. Co. Road 25A<br>Tipp City, OH 45371 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>Meijer Distribution, Inc.<br>c/o CT Corporation System<br>(Stat. Agent)<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, OH 43219 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| -and- | ) | |
| AARON MORGAN<br>c/o Meijer Distribution, Inc.<br>4200 S. Co. Road 25A<br>Tipp City, OH 45371 | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

Plaintiff Jimmie Lasley, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES

1. Lasley is a resident of the city of Dayton, Montgomery County, state of Ohio.

2. Defendants MEIJER DISTRIBUTION, INC. ("Meijer"), is a foreign-incorporated business that conducts business throughout the state of Ohio. The facts that give rise to this

Complaint, however, occurred at its distribution center located at 4200 S. Co. Road 25A, Tipp City, OH 45371.

3. At all times referenced herein, Meijer was Lasley's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, and Ohio R.C. §4112.01(A)(2).

4. Upon information and belief, Defendant AARON MORGAN is a resident of the state of Ohio.

5. Defendant Morgan is and/or was an employee of Meijer.

6. Defendant Morgan did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of Meijer and/or within the scope of his employment at Meijer.

7. At all times referenced herein, Defendant Morgan supervised and/or controlled Lasley's employment at Meijer.

8. At all times referenced herein, Defendant Morgan was Lasley's employer within the meaning of 42 U.S.C §12111 and R.C. 4112.01(A)(2).

## JURISDICTION & VENUE

9. This court has subject matter jurisdiction pursuant to 42 U.S.C §2000e and 29 U.S.C. § 2601 et seq. in that Lasley is alleging a federal law claim under Title VII.

10. This Court has supplemental jurisdiction over Lasley' state law claims pursuant to 28 U.S.C. § 1367, as Lasley' state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Within 180 days of the conduct alleged below, Lasley filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2019-00139) against Meijer ("EEOC Charge").

13. On or about November 7, 2018, the EEOC issued and mailed a Dismissal and Notice of Rights letter to Lasley regarding the EEOC Charge.

14. Lasley received his Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

15. Lasley has filed this Complaint on or before the 90-day deadline set forth in his Dismissal and Notice of Rights.

16. Lasley has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

17. Lasley is a former employee of Meijer.

18. Lasley is African American, and thus is in a protected class for his race pursuant to Title VII and R.C. § 4112 et seq.

19. Lasley worked for Meijer as a dairy warehouse clerk from in or around May 2016 until Meijer terminated Lasley's employment on or about December 9, 2017.

20. Immediately at the start of his employment, Lasley could tell that Defendant Morgan, his Caucasian supervisor (and now the GM), did not like him and was setting him up to fail.

21. Morgan would seemingly do "joking things" with Lasley, or at least things that Morgan apparently thought were jokes.

22. For example, Morgan would take stickers off of Lasley's packages and skids and place them in whatever aisle Lasley had started in that day.

23. This forced Lasley to back track to the start of his work and cost him significant time, making his work production appear weaker than it was.

24. As another example, Morgan would see Lasley doing other work, would come by with a scrubber and slick the floors Lasley was driving the skids on, in hopes he would veer off course and potentially wreck his lift.

25. Morgan also occasionally intentionally ran his skids into Lasley's skids.

26. Morgan would also frequently insult Lasley, particularly his intelligence.

27. Morgan said things like, "[Lasley] should be bright enough to know to go around and push product forward rather than reaching into slot."

28. Morgan also often followed Lasley around, seemingly trying to agitate him.

29. In response, Lasley told Morgan that he had no intent to quit this job, so Morgan should leave him alone.

30. Morgan also often told Lasley that he simply needed to "shut up and listen" to him, regardless of what Lasley said himself.

31. Eventually, the treatment and targeting escalated to the point Lasley had to report Morgan's actions to Carl (LNU, the previous GM).

32. This complaint yielded no useful results, so Lasley escalated further to Carl (LNU)'s bosses, Mike Sullivan (district manager or a similar title) and Rob Cross (CEO or a similar title).

33. Sullivan's response said that he was not involved and was not Morgan's boss, so Lasley called Cross while on the phone with Sullivan.

34. Cross told Lasley that he had not even had a chance to speak with Morgan about the situation and so could do nothing at that time.

35. Further, on multiple occasions, Morgan had Lasley removed from the premises. This often occurred after Lasley requested various performance reports/metrics.

36. The first time Lasley asked for his performance metrics, Morgan provided them to him, showing an approximately 95% completion rate. This was a good performance rate.

37. After that, Morgan refused to provide any documents, likely trying to hide the fact that Lasley was a good performer in his job, even if it was at the end of his shift and would not interfere with his performance for the day.

38. Morgan tried on multiple occasions to terminate Lasley's employment, despite Lasley's good performance.

39. One attempt at terminating Lasley's employment occurred in or around autumn 2016. Morgan approached Lasley while he was working and demanded that he answer several questions.

40. Lasley told him to wait while he finished his task, but Morgan went on a power trip and demanded he listen immediately.

41. Morgan told Lasley, "You fucking listen to what I say and come here now," Lasley protested because he was on rate, so Morgan threatened his job in response.

42. Lasley paused and told Morgan he was tired of the constant targeting, harassment, bullying, and disparate treatment from Morgan, and that if Morgan wanted Lasley gone, he should fire him.

43. Lasley asked for a copy of his performance metrics to show (again) that he was a great performer.

44. Morgan took this to be an affront, said he would not give anything to Lasley, called security, and had Lasley escorted off the property.

45. The following Monday, Carl (LNU) called Lasley and told him he was not fired and would only receive an official verbal warning.

46. Lasley asked for a union representative at that point, but his request was denied.

47. Meijer later began to change the rate system on Lasley's performance metrics.

48. Morgan harassed Lasley about his rates, so Lasley began to pay attention and keep track of his rates separately from the official method.

49. That was when Lasley noticed that Meijer would change his start/finish times; the calculation would differ on certain jobs and Meijer occasionally simply took credit away from him and gave it to other employees, despite Lasley doing the work.

50. Morgan made several comments about Lasley, implying things about African Americans in general in a hateful way.

51. Morgan said, when referring to African Americans, "All y'all are dumb."

52. Morgan referred to Lasley as "boy," and at one point even called him an "uppity nigger," in the back aisles.

53. Morgan constantly nitpicked Lasley's work, drawing his attention away from his work and forcing him off-rate, then using that time off-rate as an excuse to discipline Lasley.

54. Further, Lasley repeatedly requested performance metrics from Meijer, but each time he did, he was walked out of work. It may even be that the company was unwilling to show the metrics to prevent him from proving his claims and good performance.

55. Despite all of the issues Morgan caused for Lasley's employment, Meijer sided with Morgan.

56. On or about December 9, 2017, the company terminated Lasley's employment.

57. Meijer did not give Lasley time to assert his Weingartner Union Rights in the suspension that led up to his termination.

58. Further, Meijer refused to pay the full $1,890 of monies owed for Lasley's days illegitimately suspended noted in a letter to Lasley; Meijer also refused to rehire him, as it noted it would in that same letter.

59. As a result, Meijer paid some of Lasley's unpaid suspension wages and was told he would be allowed to return on or about December 14, 2017.

60. Lasley tried to return to work on or about the 14th, but when he came in, his badge did not work, and Morgan informed him he was not allowed to return to Meijer.

61. During his employment, Lasley complained to his superiors of the harassment and disparate treatment he was receiving for his race.

62. Lasley complained about Meijer's failure to pay his full unpaid wages. Those additional wages are still unpaid.

63. Defendants' termination of Lasley was an adverse employment action against him.

64. Defendants' purported reasons for Lasley' termination are pretextual.

65. As a result of being discriminated against, retaliated against, and being wrongfully terminated from Meijer, Lasley has suffered damages, including economic damages, as well as severe emotional distress, anxiety, and depression.

**COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII**

66. Lasley restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

67. Lasley is African American, placing him in a protected class for his race pursuant to Title VII.

68. At all times noted herein, Lasley was able to perform the essential functions of his job.

69. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

70. Defendants treated Lasley disparately due to his race.

71. During his employment with Meijer, Lasley was subjected to offensive and harassing conduct based on his race from his superiors, particularly from Morgan.

72. Defendants knew or should have known of the harassing conduct against Lasley.

73. Defendants condoned, tolerated, and ratified this harassing conduct.

74. This harassing conduct was severe and/or pervasive.

75. This harassing conduct was offensive to Lasley.

76. This harassing conduct interfered with Lasley' ability to perform his job duties.

77. Defendants' proffered reasons for Lasley' termination was pretextual.

78. Defendants violated Title VII by discriminating against Lasley during his employment.

79. Defendants violated Title VII by terminating Lasley because of his race on or about December 9, 2017.

80. As a direct and proximate cause of Defendants' conduct, Lasley has suffered and will continue to suffer damages.

**COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.**

81. Lasley restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

82. Lasley is African American, placing him in a protected class for his race pursuant to R.C. § 4112 et seq.

83. At all times noted herein, Lasley was able to perform the essential functions of his job.

84. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

85. Defendants treated Lasley disparately due to his race.

86. During his employment with Meijer, Lasley was subjected to offensive and harassing conduct based on his race from his superiors.

87. Defendants knew or should have known of the harassing conduct against Lasley.

88. Defendants condoned, tolerated and ratified this harassing conduct.

89. This harassing conduct was severe and/or pervasive.

90. This harassing conduct was offensive to Lasley.

91. This harassing conduct interfered with Lasley' ability to perform his job duties.

92. Defendants' proffered reason for Lasley's termination was pretextual.

93. Defendants violated R.C. § 4112 et seq. by discriminating against Lasley during his employment.

94. Defendants violated R.C. § 4112 et seq. by terminating Lasley because of his race on or about December 9, 2017.

95. As a direct and proximate cause of Defendants' conduct, Lasley has suffered and will continue to suffer damages.

**COUNT III: WRONGFUL TERMINATION BASED ON RACE DISCRIMINATION**

96. Lasley restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

97. Lasley is African American, placing him in a protected class for his race pursuant to Title VII and R.C. § 4112. et seq.

98. On or about December 9, 2017, Defendants terminated Lasley's employment.

99. Defendants' proffered reason for Lasley' termination was pretextual.

100. Defendants actually terminated Lasley's employment based on his race.

101. Lasley's race was a determinative factor in Defendants' decision to terminate his employment.

102. Defendants replaced Lasley with someone outside his protected class, upon information and belief.

103. Defendants violated Title VII, R.C. §4112.02(A), and R.C. § 4112.99 when it terminated Lasley' employment based on his race.

104. As a direct and proximate result of Defendants' conduct, Lasley has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: RETALIATION

105. Lasley restates each and every prior paragraph of this complaint, as if it were fully restated herein.

106. As a result of the Defendants' discriminatory conduct described above, Lasley complained of the discrimination, harassment, and disparate treatment he was experiencing.

107. Subsequent to Lasley's complaints to Meijer, Defendants took adverse employment actions against Lasley, including terminating his employment.

108. Defendants' actions were retaliatory in nature based on Lasley's opposition to the unlawful discriminatory conduct.

109. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

110. As a direct and proximate result of Defendants' retaliatory discrimination against and discharge of Lasley, he has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT V: FAILURE TO MAKE SEMIMONTHLY WAGE PAYMENTS IN VIOLATION OF R.C. §4113.15

111. Lasley restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

112. Pursuant to R.C. §4113;15(A), "Every individual, firm, partnership, association, or corporation doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

113. Defendants refused to pay Lasley his wages; he was shorted time on his final paycheck and was never paid for that time.

114. Lasley demanded that Defendants pay his wages on time; Defendant refused despite agreeing to pay that time in full.

115. Defendants' conduct violated R.C. §4113.15.

116. As a direct and proximate result of Defendants' conduct, pursuant to R.C. §4113.15(B), Defendants are liable to Lasley for his unpaid wages, and an amount equal

to six per cent of the amount of the claim still unpaid and not in contest or disputed, or two hundred dollars, whichever is greater.

## COUNT VI: BREACH OF CONTRACT

117. Lasley restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. Under Lasley's agreement with Defendants, Defendants were obligated to pay Lasley for his time illegitimately suspended and reinstate his position with Meijer.

119. Lasley attempted to complete his side of the contract by returning to work on or about December 14, 2017.

120. Defendants breached their contractual obligations to Lasley by refusing to pay those wages and reinstate his position.

121. As a result of Defendants' acts, Lasley has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VII: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION

122. Lasley restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. In or around December 2017, Lasley complained about Defendants' failure to pay his full unpaid and promised wages.

124. Following Lasley's complaints and as a proximate cause of the complaints, Defendants retaliated against Plaintiff by later refusing to reinstate his employment.

125. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for

12

exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

126. Defendants' act of terminating Lasley from his employment constituted a retaliatory discharge in violation of Article II, Section 34a of the Ohio Constitution.

127. As a direct and proximate cause of Defendants' retaliatory conduct, Lasley suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Lasley demands from Defendants the following:

a) Issue a permanent injunction:

   i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge his personnel file of all negative documentation;

c) An award against Defendants for compensatory and monetary damages to compensate Lasley for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendants in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Lasley' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew G. Bruce*
Matthew Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
8354 Princeton-Glendale Rd, Suite 203
West Chester, OH 45069
Phone: (513) 883-1147
Fax:   (216) 291-5744
Email: Evan.McFarland@SpitzLawFirm.com
Email: Matthew.Bruce@spitzlawfirm.com

*Attorneys for Plaintiff Jimmie Lasley*

## **JURY DEMAND**

Plaintiff Jimmie Lasley demands a trial by jury by the maximum number of jurors permitted.

*/s/ Matthew G. Bruce*
Matthew Bruce (0083769)